IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERRANCE REASER, #265 571, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:16-CV-566-MHT |
| | )                    [WO] |
| MR. BORDERS,[1] *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Terrance Reaser, an inmate in the custody of the Alabama Department of Corrections, files this *pro se* civil rights action under 42 U.S.C. § 1983. He alleges a claim of excessive force in violation of his Eighth Amendment rights during his incarceration at the Easterling Correctional Facility in Clio, Alabama.[2] The complaint is filed against Sgt. Mitchell Borders, Lieutenant Larry Peavy, and Correctional Officer Munchie Keeton. Reaser requests relief for the violation of his constitutional rights and for pain and suffering. Doc. 1.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Reaser's claims for relief. Docs. 11 & 12. In these filings, Defendants deny they acted in violation of Reaser's constitutional rights. Docs. 11 & 12. Upon receipt of Defendants' special report, the court issued an order directing Reaser to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Reaser "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. 13. Reaser responded to Defendants' special report, *see* Doc. 16, but his response does not demonstrate there is any genuine issue of material fact. *See*

---

[1] Reaser incorrectly identified this defendant in his complaint at Mr. Borden.
[2] During the pendency of this action Reaser was transferred to another correctional facility in Alabama.

Doc. 13 at 2. The court will treat Defendants' report as a motion for summary judgment and resolve this motion in their favor.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−24.

Defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Reaser to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is

entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). For this reason, a "mere 'scintilla' of evidence supporting the opposing party's position will not suffice." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255; *see also United States v. Stein,* 881 F3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn

testimony even though it is self-serving.'"). "Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. F. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se* status alone does not mandate that the court disregard elementary principles of production and proof in a civil case. Here, Reaser fails to demonstrate a genuine dispute of material fact to preclude summary judgment on his claims against Defendants.

## II. DISCUSSION

### A.    Absolute Immunity

To the extent Reaser sues Defendants in their individual and official capacities, they are entitled to absolute immunity from monetary damages in an official capacity suit. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated the state's immunity. Alabama has not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429

4

(11th Cir. 1997) (citations omitted).

In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Id.*; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B.      Qualified Immunity

In response to Reaser's allegations, Defendants argue that they are entitled to qualified immunity against suits in their individual capacities. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but rather immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citations omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The record shows Defendants were acting within the course and scope of their discretionary authority at the time of the events giving rise to Reaser's claims. Reaser must, therefore, allege facts that, when read in a light most favorable to him, show that Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, a plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly

established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (quotation marks and citations omitted). The controlling authority is from "the United States Supreme Court, the Eleventh Circuit, or the highest court in the relevant state." *See id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quotation marks and citations omitted). A *per se* rule that qualified immunity is inappropriate on summary judgment where a plaintiff has not presented evidence that could sustain an Eighth Amendment excessive force claim would eviscerate the plaintiff's burden of proof to show a constitutional violation once a defendant evokes qualified immunity and turn Rule 56 on its head.[3] *See Hope*, 536 U.S. at 736; *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that a plaintiff bears the burden of showing that a constitutional violation occurred to defeat a defendant's assertion of qualified

---

[3] Qualified immunity is not available on a motion to dismiss where a plaintiff alleges that a defendant used excessive force in violation of the Eighth Amendment. When ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plaintiff's burden of proof in a case where a defendant raises the defense of qualified immunity, therefore, depends on the type of motion pending before the court. Here, the case is pending on Defendants' motion for summary judgment. Accordingly, where evidence is considered by the court, it is construed in the light most favorable to Reaser. However, to avoid qualified immunity, Reaser's evidence must support an Eighth Amendment excessive force claim.

immunity); *see also Celotex*, 477 U.S. at 323–24; Fed. R. Civ. P. 56; *Skelly v. Okaloosa Cnty. Bd. of Cnty. Comm'rs*, 456 F. App'x 845, 847–48 (11th Cir. 2012) (engaging in a qualified immunity analysis on Eighth and Fourteenth Amendment excessive force claims and distinguishing between a plaintiff's burden to show a constitutional violation in the first instance from the fact that, once a violation is demonstrated, the Eighth Amendment right always is clearly established).

The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210. "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42).

### 1.    *Summary Judgment Facts for Qualified Immunity*

On June 25, 2016 at approximately 7:45 a.m. Reaser approached Officer Randy Brown, the dorm rover for Dormitory C1 (the restricted privileges dorm) to ask if his name was on the list to be moved to another dormitory. Officer Brown told Reaser his name was not on the list, but explained he would be released from C1 Dormitory when bed space was available. Reaser became angry and raised his arm in a threatening manner but did not hit the officer. Officer Brown reported the incident ("called the code" in correctional officer terminology). Defendants Peavy and Borders and Sergeant Enfinger responded to Officer Brown's call. The guards handcuffed Reaser and escorted him from C1 Dormitory. As the group exited the dormitory, Reaser became unruly and stated to a guard, "I will get your ass as soon as I get out." During the escort to the segregation

unit Reaser continued to argue that it was time for him to be moved from C1 Dormitory. As the group neared the segregation unit, Reaser pulled away from Defendant Borders, who was holding his arm. Defendant Border responded by pushing Reaser to the wall. Shortly thereafter, nursing staff conducted a medical assessment or Reaser and photographs were taken. Reaser was provided an opportunity to provide an inmate use-of-force written statement. Docs. 1, 5, 12-1, 12-3 & 12-4.

Reaser's medical records reflect that he received a body chart at 8:09 a.m. on June 25, 2016. Medical staff noted that Reaser was alert, his gait was steady, he had a small scratch on the right side of the back of his neck, and he complained of pain to the right side his face. Reaser's body chart does not note any other complaints, injuries, or problems regarding his encounter with prison officials on June 25, 2016, and there is no indication any medical treatment was required. Medical staff released Reaser to the custody of correctional officials at 8:14 a.m. Doc. 12-1 at 2.

### 2. *Constitutional Violation*

Claims of excessive force by jail officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. 503 U.S. at 8 (internal quotations omitted). Regarding the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to

pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Id.* at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The core inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 39 (2010) (per curiam) (citation omitted).

Whether force was applied maliciously and sadistically to cause harm requires analysis of several factors, including: "a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam). While a lack of serious injury is relevant to the inquiry, "[i]njury and force . . . are only imperfectly correlated and it is the latter that ultimately counts." *Wilkin*, 559 U.S. at 38; *see also Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) (finding that "the application of *de minimis* force, without more, will not support a claim for excessive force"); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (finding that "[t]he management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force"); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (finding that the application of *de minimis* force, without more, presents no claim cognizable under the Eighth Amendment).

Viewing the evidence of record in a light most favorable to Reaser, Defendants Peavy and Borders used a constitutionally permissible use of force to maintain order, prison security, and safety. As related by Reaser, a guard had to call a code for assistance in response to Reaser's conduct towards the officer. Reaser denies hitting the guard but does not dispute he raised his arm toward the guard in a threatening manner. Likewise, Reaser does not dispute he verbally threatened another officer as he was being escorted from C1 Dormitory, that he continued to verbalize his displeasure over failing to be moved out of C1 Dormitory, and that he pulled away from Defendant Borders as they neared the entry to the segregation unit. The undisputed documents and records also support this description of events. Doc. 12-1. Reaser maintains that Defendant Peavy pulled his arms "hard to the back" and Defendant Borders twice "ram[med] and push[ed his] head to the wall very hard."[4] Doc. 16 at 12; *see also* Doc. 5. Medical staff evaluated Reaser immediately after the incident and observed a small scratch to the back of his neck and noted his complaint of face pain. But the body chart did not document any other injuries, problems, or concerns. Doc. 12-1 at 2.

Here, Reaser has not demonstrated that Defendants Peavy or Borders used force maliciously and sadistically for the purpose of causing him harm. The force used by these defendants was not disproportionate to the need to restore order and ensure compliance with orders and prison rules. Reaser does not dispute Defendants' evidence he exhibited disorderly and threatening conduct to an officer in C1 Dormitory on learning he would not be transferred from the dorm prompting the officer to call a code, that his behavior on exiting C1 Dormitory involved verbal threats to a correctional officer, and that his overall demeanor was unruly and agitated.

---

[4] Reaser's affidavit filed in opposition to Defendants' dispositive motion references the date of the incident as "5-25-16." Doc. 16 at 12. The court considers this an inadvertent error regarding the actual incident date of June 25, 2016 based on the record evidence.

When Reaser pulled away from Defendant Borders as they entered the segregation unit, the guard pushed him against the wall until he calmed down. *See Brown v. Smith,* 813 F.2d, 1187, 1189 (11th Cir. 1987) (finding that grabbing an inmate's arm to force compliance was not excessive force); *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) (finding a prison guard may use force to maintain order and that a verbal altercation between an inmate and a guard can fall within the scope of maintaining order); *see also Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) ("Prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those orders."). Taking Reaser's factual allegations as true, the actions of Defendants Peavy and Borders from the time they encountered Reaser and upon entry to the segregation unit reflect a good faith effort to maintain or restore discipline. The force used by Defendants Peavy and Borders when Reaser pulled away from their control at the segregation unit, given his agitated state, was not for the purpose of causing harm, but for the purpose of regaining control, preventing any further escalation of the situation, and restoring prison safety and security. *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) ("When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger."); *see also Whitley*, 475 U.S. 3at 320–21 ("The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied . . . was unreasonable . . . .").

After Reaser calmed down, he was examined by medical personnel who documented no discernible injuries from his encounter with Defendants Peavy and Borders other than a small scratch and a subjective complaint of pain. Reaser did not require any medical treatment after his

encounter with Defendants Peavy and Borders. *See, e.g.*, *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records.").

Although Reaser maintains Defendants Peavy and Borders used force that was unjustified and unfair, as explained above, an inmate's unruly, threatening, and defiant behavior creates a threat to the safety of staff and inmates. *See, e.g., Danley*, 540 F.3d at 1308. Here, there is no dispute the use of force was brief and ceased after Reaser calmed down. Reaser received a medical evaluation within minutes of the incident that revealed a small scratch. Viewing the evidence in the light most favorable to Reaser, his allegations do not support a reliable inference that Defendants Peavy or Borders used force maliciously for the purpose of causing harm or engaged in a wanton infliction of pain. Rather, these defendants acted within the permissible range of deference and, based on the record evidence, the court concludes their use of force was necessary to restore discipline, diffuse the threat of harm from Reaser, and maintain prison security. *Brown*, 813 F.2d at 1188 (holding that a prisoner's "evidence must go beyond a mere dispute over reasonableness of the force used and support a reliable inference of wantonness in the infliction of pain"); *McReynolds v. Ala. Dep't of Youth Servs.*, 2008 WL 1927373, *3 (M.D. Ala. Apr. 29, 2008) (citation omitted) ("Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm."). Reaser fails to meet his burden of demonstrating a constitutional violation. Accordingly, Defendants Peavy and Borders are entitled to qualified immunity on Reaser's excessive force claim against them in their individual capacities.

## C.    Harassment

Reaser complains that Defendant Keeton harassed him every time the officer saw him. On

June 24, 2016, Reaser was on his way to the kitchen to eat lunch when Defendant Keeton "rush[ed] up to [him] and took [his] food tray." Doc. 5 at 1. Reaser claims Defendant Keeton did so to provoke Reaser to hit him, which would give Defendant Keeton and another officer a reason to beat him and put him in lock up. Despite Defendant Keeton's provocation, Reaser states that he did not hit the officer. Defendant Keeton admits to taking Reaser's food tray when the inmate failed to comply with an order but confirms there was no physical altercation between him and Reaser. *See* Docs. 1 at 4, 1-1 at 1, 5 at 1, 16 at 11 & 12-5.

A claim for relief under § 1983 must, at a minimum, identify an act or omission in violation of a constitutional or federal right by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). Here, Reaser's claim that Defendant Keeton's conduct in taking his food tray subjected him to cruel and unusual punishment because of the rough manner in which the officer took his tray entitles him to no relief. Reaser has no right to courteous correctional officers. Mere statements by prison officials—even statements rising to the level of threats—are insufficient to support a constitutional claim, and Defendant Keeton used no physical force against Reaser when taking the inmate's tray. *See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008). Derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, however, do not rise to the level of a constitutional violation. *Id.*; *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (holding that mere verbal taunts, despite their distressing nature, directed at inmate by jailers do not violate inmates' constitutional rights); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts . . . resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment."); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) ("[A]lleged verbal threats by jail officials . . . did not rise to the level of

a constitutional violation."); *Gaul v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (holding that mere threat does not constitute a constitutional wrong). Defendant Keeton is entitled to qualified immunity on this claim.

**D.    Missed Meal**

Reaser complains that he missed a meal when Defendant Keeton took away his lunch tray on June 24, 2016. Under the Eighth Amendment, prison officials have a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To determine whether an inmate's Eighth Amendment rights were violated by a deprivation, courts must examine the alleged violation both objectively and subjectively. *Id.* at 834. "First, the deprivation alleged must be, objectively, sufficiently serious." *Id.* (quotation omitted). Second, the mental state of the prison official must have been "one of deliberate indifference to inmate health or safety." *Id.* (quotation omitted).

"The Constitution requires that prisoners be provided reasonably adequate food." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1986) (internal quotation marks and citation omitted). Withholding of food, however, does not *per se* constitute an objectively serious deprivation in violation of the Constitution. *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). Regarding an inmate's claim challenging a denial of food, courts look to the amount and duration of the deprivation in determining whether the deprivation is sufficiently serious. *See Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998). "In general, the severity and duration of deprivations necessary to state a constitutional violation are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration." *Deapain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (internal quotation marks and

14

citation omitted).

Here, Reaser alleges the deprivation of a single meal on one occasion. This does not amount to a significant deprivation. Further, there is no indication Reaser suffered any adverse physical effects or that his health was jeopardized because of the single deprivation. *See Dartling v. Farwell*, 139 F. App'x 847 (9th Cir. 2005) (finding inmate's allegation he was deprived of a single meal did not constitute an injury serious enough to support an Eighth Amendment claim); *Gardner v. Beale*, 780 F. Supp. 1073 (E.D. Va. 1991), *aff'd* 998 F.2d 1008 (4th Cir. 1993) (finding that providing prisoner with only two meals per day, with an 18–hour interval between dinner and brunch, did not satisfy objective component of Eighth Amendment standard); *Wilkins v. Roper*, 843 F. Supp. 1327 (E.D. Mo. 1994) (concluding plaintiff failed to state a claim under the Eighth Amendment based on the denial of a single meal); *Brown v. Madison Police Dep't*, 2003 WL 23095753, *3 (W.D. Wis. 2003) (dismissing claim by plaintiff alleging that he was denied two meals on a single occasion); *Adair v. Okaloosa Cnty. Jail*, 2008 WL 564616 (N.D. Fla. Feb.17, 2008) (unpublished opinion) (concluding that deprivation of one meal does not satisfy Eighth Amendment standard). Defendant Keeton is entitled to qualified immunity on this claim.

## E.    Equal Protection

Reaser complains that inmates placed in C1 Dormitory after him had their names on the "kick out" list for placement in the program dorm while he had to remain in the restricted dormitory with no phone, television, or store privileges. Reaser maintains that this violated his right to equal protection. Doc. 1-1 at 3.

To establish a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on

race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006) (citations omitted). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . [An allegation] of . . . discriminatory intent or purpose [related to a constitutionally protected interest] is required to [set forth] a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977). "'Discriminatory purpose' . . . implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). Evidence which merely indicates disparity of treatment or erroneous or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987); *E & T Realty Co. v. Strickland*, 830 F.2d 1107 (11th Cir. 1987).

Reaser fails to show that Defendants subjected him to adverse treatment based on some constitutionally impermissible reason. Instead, he simply makes the conclusory assertion that differential treatment resulted in an equal protection violation. To the extent Reaser regards as actionable unequal treatment the fact that he remained in the restricted privileges dormitory longer than other inmates as the basis for his claim, the mere differential treatment of inmates fails to violate the Equal Protection Clause. Because Reaser's allegations supporting his equal protection claims do not rise to the level of a constitutional violation, Defendants are entitled to qualified immunity.

## F.    Conditions

Reaser complains that his placement in the restricted dormitory amounted to cruel and

unusual punishment because his access to phone, television, and store privileges was suspended. Under the Eighth Amendment a state may not subject inmates to conditions that may "deprive [them] of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33–34 (1993). The Supreme Court, however, has made clear that the Constitution requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). To the extent prison conditions are restrictive or even harsh, this is part of the penalty that criminal offenders pay for their offenses against society. *Id.* at 347.

As explained above, to prevail on an Eighth Amendment claim, a plaintiff must demonstrate that (1) the deprivation alleged is, from an objective standpoint, "sufficiently serious"; and (2) that prison officials acted with "deliberate indifference," that is, the officials knew of and disregarded an excessive risk to inmate health and safety. *Farmer*, 511 U.S. at 834. Only conditions of confinement which involve the wanton and unnecessary infliction of pain or deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes*, 452 U.S. at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991). Extreme deprivations are required to make out a conditions-of-confinement claim under the Eighth Amendment. *Chandler v. Crosby*, 379 F.3d 1278, 1298 (11th Cir. 2004).

Temporary housing in a dormitory that restricts an inmate's access to privileges like the canteen, telephones, and television does not amount to a sufficiently grave deprivation denying Reaser the minimal civilized measure of life's necessities. Other than alleging that being housed in C1 Dormitory deprived him of various inmate privileges, Reaser does not claim that the temporary withdrawal of those privileges subjected him to an unquestioned and serious deprivation of his basic human needs or that he faced an unreasonable risk of serious damage to his future

health or safety because of the challenged conditions. Defendants are entitled to qualified immunity on this claim. *See Helling*, 509 U.S. at 33–35.

## G.      Due Process

To the extent Reaser asserts a claim for denial of due process under the Fourteenth Amendment because of his temporary assignment to the restricted privileges dormitory, he is entitled to no relief. To support a due process claim, Reaser must allege that a constitutionally protected life, liberty, or property interest was at stake. The Constitution itself does not give prisoners an interest in being assigned to a particular area within a penal facility. *Cf. Meachum v. Fano*, 427 U. S. 215, 224 (1976) ("The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution."). Further, the law is settled that prison administrators are accorded wide deference in determining the policies and procedures for handling inmate populations, and federal courts rarely interfere in such discretionary decisions. *See generally Sweet v. S.C. Dep't of Corr.*, 529 F.2d 854, 859 (4th Cir. 1975) (describing federal court's deference to prison administrators and all administrative matters unless a condition rises to the level of a constitutional violation).

While a state can create a constitutionally protected liberty interest, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does

not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("The transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.")

Reaser has not demonstrated that his placement in the restricted privileges dormitory deprived him of a liberty interest inherent in the Constitution. *See Sandin*, 515 U.S. at 484. No evidence has been presented upon which a state-created liberty interest could be found, nor has Reaser demonstrated that his confinement in C1 Dormitory amounted to a dramatic departure from the ordinary conditions of confinement. *Id.* at 485–87. Because Reaser has not shown a deprivation of a protected liberty interest, he fails to demonstrate a due process claim based on the challenged housing assignment. *See id.* at 487; *Griffin v. Vaughn*, 112 F.3d 703, 706 (3rd Cir. 1997). Defendants are entitled to qualified immunity on this claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1.     Defendants' motion for summary judgment (Doc. 12) be GRANTED;

2.     This case be DISMISSED with prejudice;

3.     Judgment be ENTERED in favor of Defendant;

It is ORDERED that **on or before June 5, 2019**, the parties may file an objection. Any objection filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE on this 22nd day of May, 2019.

_____

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE